1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY BARRETT,                        Case No. 1:20-cv-01802-NONE-EPG (PC)

12                  Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                             RECOMMENDING THAT THIS ACTION
13         v.                                PROCEED ON PLAINTIFF'S FIFTH
                                             AMENDMENT AND EIGHTH
14   A. CIOLLI, et al.,                      AMENDMENT CLAIMS AGAINST MRS.
                                             RODRIGUEZ AND DOES 1 THROUGH 20
15                  Defendants.              AND THAT ALL OTHER CLAIMS AND
                                             DEFENDANTS BE DISMISSED
16
                                             (ECF No. 16)
17
                                             OBJECTIONS, IF ANY, DUE WITHIN
18                                           TWENTY-ONE DAYS

19

20         Plaintiff Anthony Curtis Barrett ("Plaintiff") is a federal inmate proceeding *pro se* and *in*

21   *forma pauperis* in this civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics*

22   *Agents*, 403 U.S. 388 (1971).

23         I.      BACKGROUND

24         Plaintiff filed the complaint commencing this action on December 22, 2020. (ECF No. 1.)

25   On April 5, 2021, the Court screened Plaintiff's complaint and found that it failed to state any

26   cognizable claims. (ECF No. 8.) The Court gave Plaintiff thirty days to either "a. File a First

27   Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint."

     (*Id.* at 16.) On February 19, 2021, Plaintiff filed his First Amended Complaint. (ECF No. 9.)
28

On May 4, 2021, the Court screened Plaintiff's First Amended Complaint and entered findings and recommendations recommending that this action proceed on Plaintiff's Fifth Amendment claims for deprivation of property and deprivation of liberty without due process and on Plaintiff's Eighth Amendment claims for unconstitutional conditions of confinement and deliberate indifference to serious medical needs against Doe defendants. (ECF No. 10.) The Court further recommended that all other claims and defendants be dismissed for failure to state a claim upon which relief may be granted. (*Id.*) Plaintiff was provided an opportunity to file objections to the findings and recommendations. (Id.)

On May 21, 2021, Plaintiff filed his objections to the Court's findings and recommendations. (ECF No. 12.) Plaintiff's objections contained new factual allegations that were not included in the original complaint or the First Amended Complaint. (See ECF Nos. 1, 9.) However, the Court could not consider factual allegations in Plaintiff's objections in deciding whether Plaintiff stated any legal claims. The Court therefore entered an order on May 24, 2021, granting Plaintiff leave to file an amended complaint. (ECF No. 13.) The Court's order explained that it was not vacating the findings and recommendations entered on May 4, 2021 at that time but may do so if Plaintiff filed an amended complaint. (Id.) On June 9, 2021, Plaintiff filed a Second Amended Complaint. (ECF No. 16.) In light of the Second Amended Complaint, the Court vacated the findings and recommendations entered on May 4, 2021. (ECF No. 17.) Plaintiff's Second Amended Complaint is now before this Court for screening.

For the reasons that follow, the Court will recommend that this action proceed on Plaintiff's Fifth Amendment claim for deprivation of property without due process against Mrs. Rodriguez and John/Jane Does 1 through 5, Plaintiff's Fifth Amendment claim for deprivation of liberty without due process against John/Jane Does 6 through 10, Plaintiff's Eighth Amendment claim for unconstitutional conditions of confinement against John/Jane Does 11 through 15, and Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs against John/Jane Does 16 through 20. The Court will also recommend that all other claims and defendants be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the inmate has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id*. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

## II.    ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiff names Lt. Scott, Mr. Young, Mrs. Rodriguez, A. Ciolli, and John and Jane Does as defendants. The Second Amended Complaint alleges as follows:

///

///

**Deprivation of Property**

On March 9, 2020, prison staff seized Plaintiff's personal property while conducting an inventory during a lockdown of Unit 2A. Most of the seized property was perishable food, personal hygiene, a solar powered radio, and other personal property. All items were purchased from the prison commissary and could be safely stored in the locker furnished to him by the Federal Bureau of Prisons. On March 8, 2020, prison staff sent out a memo stating that all personal property must be placed in a green duffle bag. On March 9, 2020, prison staff came and had inmates place their property in the green duffle bag. Prison staff told inmates not to take any personal property with them when exiting the cell, including any personal clothing, watches, wallets, mailing stamps, shoes, radios, mp3 players, etc. Inmates had to exit their cells dressed in a white t-shirt, khaki pants, one pair of boxers, and shower shoes. Prison officials failed to document the inmates' personal property correctly and they did not document what was taken. Prison staff took Plaintiff's personal property and forced him to sign incomplete property forms under threat and duress.

Plaintiff asked for the return of his property and sent requests to Lt. Cobbs for the return of his personal property. Plaintiff never received a response from Lt. Cobbs. Plaintiff also sent claims to the Federal Bureau of Prisons Regional and Central Offices and those claims were denied. As a prisoner, Plaintiff has a protected right and interest in his personal property and Plaintiff's property was taken deliberately to punish him for other inmates' acts. This was clearly an unfair practice by the Federal Bureau of Prisons staff and officials.

The green duffle bag was 16" in depth and 42" in length and totaled approximately 6.2 feet in square measurement. This green duffle bag was only used to take inmate's property. Prison staff knew that the green duffle bag was smaller than the inmates' assigned lockers. The assigned lockers were in each inmates' cell and were the same size, measuring approximately 24" in width, 18" in depth, and 40" in height, equaling approximately 10.8 feet in square measurement. Each officer and prison official participated in an unlawful confiscation of Plaintiff's personal property and violated Plaintiff's constitutional rights. They had no reason whatsoever to confiscate Plaintiff's personal property.

Inmates store their personal property in the assigned lockers and not in a green duffle bag. The green duffle bag was only used for this particular occasion in order to take inmates' personal property. Plaintiff did not have any choice but to comply with the orders given to him and he was not provided an opportunity to store his personal property or send it home on his behalf. Prison officials and staff took and enjoyed Plaintiff's personal property. A. Ciolli deprived Plaintiff of his property and liberty without due process and with unconstitutional conditions of confinement. When Plaintiff returned to his unit, he witnessed some of his personal property in the officers' station. Plaintiff asked one of the officers working the unit to return his personal property and the officer stated that the property was a perk of the job. On the day of this search, there were many different officers and prison officials and it was almost impossible to get names. The Superintendent of Education had Plaintiff sign an incomplete property form and was also part of the search team that took personal property.

The search was only conducted to take inmates' personal property and was not done according to policy. Plaintiff's personal property was taken by prison staff and officials under the guise of a search. Prison staff and officials should not be allowed to abuse their authority and by doing so they take away the rights of the people they serve. Plaintiff's family provides him with financial support to purchase things he needs. For prison staff and officials to take Plaintiff's personal property because they are in a position of authority is unfair to Plaintiff and his family. The Federal Bureau of Prisons and its staff have abused their authority and deprived Plaintiff of his constitutional rights and Plaintiff has a right to be compensated for his property loss. The only way Plaintiff can get justice for the deprivation is through the court. The Federal Bureau of Prisons and its staff change the rules at their convenience to benefit the prison staff and officials because they can and they make the rules. Plaintiff has exhibits in support of his deprivation of property claim. All defendants were personally responsible for violation of Plaintiff's rights. This includes John and Jane Doe staff, officials, and prison officers.

**Lockdown**

The lockdown was unduly disparate informal punishment and was executed under the fabricated and erroneous pretext that Unit 2A was banging and kicking on cell doors and yelling

at prison staff during the 10:00 AM count. The punishment is cruel and unusual. Plaintiff is a United States Army veteran and the treatment federal prisoners receive is totally unbelievable. Plaintiff often thinks to himself that he was willing to give his life for people like this. Inmates are treated as if they are not even human.

Prison staff and officers failed to provide inmates with basic necessities such as toothpaste, toothbrushes, toilet paper, and soap. Plaintiff did not have any personal hygiene for a full week. This is the United States and not some third world country. This treatment caused tension between Plaintiff and his cellmate. The Federal Bureau of Prisons and its officials had two men existing in a confined space and living in inhumane conditions for one week. Prison staff knew that they were abusing their authority, but it's punishment and they are prisoners so who care what happens to them. The lack of sanitation was severe and prolonged.

Inmates received nutritionally inadequate food for one full week and they were served the same meals for breakfast, lunch, and dinner. The food was totally unhealthy for Plaintiff because he suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD. The lack of exercise caused Plaintiff great stress and the way he was treated was inhumane. Plaintiff believes that all of this caused his hypertension and diabetes.

Plaintiff was denied medical and psychological care for that entire week. Plaintiff did not receive any of his prescribed medications. He was diagnosed by a physician of his conditions and the treatment was denied. This was left unattended and caused a substantial risk of serious harm. Plaintiff did not have hypertension or diabetes until this occurrence. Adequate medical and psychological care has been violated. Plaintiff is really suffering from this denial today.

Plaintiff was assaulted by his cellmate twice, once during the week of this lockdown and another on June 27, 2020. Plaintiff's safety was denied. He was helpless and believes that his race contributed to the denial of medical and psychological care because there was a difference between the way he was treated and the Mexican inmates. Plaintiff's medical condition went from pre-diabetes to diabetes. He never had hypertension. He believes that the deprivation of medical care, lack of exercise, and inadequate food all contributed to his current medical conditions. Plaintiff's personal safety was jeopardized and no one did anything about it. It was as if it did not

even happen.

**Access to Courts**

Plaintiff did not have the ability to meet filing deadlines or to present his claim. When Plaintiff did receive answers to various claims that he had filed, they were denied. This goes for both the federal courts and the Federal Bureau of Prison's administrative remedies. At USP Atwater, the staff only allows inmates to possess legal work on open cases. Legal materials at USP Atwater is considered personal property and this denies Plaintiff legal materials used to access the courts. If Plaintiff is not allowed his legal material, this is a denial of access to the courts because he is being denied the materials to work on his case. Not to mention access to the law library for one full week due to lockdown. Not having access to legal materials is also a part of not having access to the courts because this is still an actual injury and actual prejudice with respect to contemplated or existing litigation. This hinders Plaintiff's ability to meet a filing deadline or to present a claim. Every defendant who is guilty of willful inhumanity or oppression towards Plaintiff or any other inmate under his or her care or in his or her custody has violated their own policies.

**Medical Care**

The medical treatment that Plaintiff received during this period was a deliberate indifference to serious medical needs. Not giving Plaintiff his prescribed medication and denying him psychological care has caused his condition to worsen. This mistreatment has further significant injury and the defendants' response to the need was deliberately indifferent. Prison staff deliberately threw Plaintiff's prescribed medication away during this search and denied him access to obtain that medication. Prison staff disregarded an excessive risk to his health and safety. Prison staff purposely denied Plaintiff's medical needs and harm caused by indifference. Plaintiff was denied medical and psychological care for an entire week and he did not receive any of his prescribed medication. Plaintiff currently suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD, and his condition went from pre-diabetes to diabetes. He believes the lack of medical care, the injury to his eyes from the assault by his cellmate, the lack of exercise, and inadequate food all contributed to his current medical conditions. Prison staff

knew they were abusing their authority and did nothing about it. Prison staff and officials or officers are John and Jane Does. A. Ciolli was the official that went against policies that were in force. He changed the policies to fit his need.

In general, the Bureau of Prisons, under the direction of the Attorney General, shall have charge of the management and regulation of all federal penal and correctional institutions, provide suitable quarters, and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States. Plaintiff was assaulted by his cellmate twice. This assault failed the safekeeping standard and care by A. Ciolli and all the John and Jane Does at the United States Penitentiary. Plaintiff could have easily lost his life. The policies set out for the staff and officials are not upheld and someone has to be held accountable. A. Ciolli has failed to uphold the office that he was sworn to uphold. Plaintiff's care and safekeeping is in the hands of the officials and staff of the Federal Bureau of Prisons. A misuse of power has caused Plaintiff's constitutional rights to be violated. Cruel and unusual punishment, deprivation of property, denial of medical care and psychological care, due process property, and access to courts. There was a negligence of the John and Jane Does in failing to follow their own policies. The above defendants were negligent and this negligence contributed to Plaintiff's loss. The loss of Plaintiff's sanity, health, and eye sight. Plaintiff has suffered losses that he may never get back.

## III.   *BIVENS* CLAIMS

Based on the case *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), courts have found that individuals may sue federal officials for damages for constitutional violations under certain circumstances. A *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250 (2006). The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. *Baiser v. Department of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer deprived him of his constitutional rights." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing *Schearz v. United States*, 234 F.3d 428, 432

(9th Cir. 2000). A *Bivens* claim is only available against officers in their individual capacities. *Morgan v. U.S.*, 323 F.3d 776, 780 n.3 (9th Cir. 2003); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*." *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988).

Plaintiff must allege facts linking each named defendant to the violation of his rights. *Iqbal*, 556 U.S. at 676; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79.

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Not all constitutional cases against federal officers for damages may proceed as *Bivens* claims. There is a two-part test to determine whether a *Bivens* action may proceed. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017). A court must first consider whether the claim presents a new context from the three cases the Supreme Court has allowed to proceed under *Bivens*: *Bivens*; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980).[1] If the answer is no, the claim may proceed. If the answer is yes, the court must apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding *Bivens* to the action. *Abbasi*, 137 S. Ct. at 1857, 1875.

---

[1] The Supreme Court has summarized those three cases:

> In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim. The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.

*Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (citations shortened).

The Ninth Circuit has summarized those special factors as follows:

> the rank of the officer involved; whether *Bivens* is being used as a vehicle to alter an entity's policy; the burden on the government if such claims are recognized; whether litigation would reveal sensitive information; whether Congress has indicated that it does not wish to provide a remedy; whether there are alternate avenues of relief available; and whether there is adequate deterrence absent a damages remedy, among other factors. But the most important question for us to examine is whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) (internal quotation marks, citations and alterations omitted).

## IV. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Deprivation of Property

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974),[2] and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. *See Hudson v. Palmer,* 468 U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982)); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan,* 455 U.S. at 436; *Piatt v. McDougall,* 773 F.2d 1032, 1036 (9th Cir.1985); *see also Knudson v. City of Ellensburg,* 832 F.2d 1142, 1149 (9th Cir. 1987).

"[D]ue process rights of prisoners and pretrial detainees [to deprivation of property without due process of law] are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution." *Bell v. Wolfish*, 441 U.S.

---

[2] *Wolff* and other cases cited in this section involved state, not federal, actors, and were therefore decided under the Fourteenth Amendment's due process clause. However, courts use the same standards under the Fifth Amendment's due process clause. *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991) ("Although *Hudson* involved § 1983 and the Fourteenth Amendment, the same due process principles apply to the federal government through the Fifth Amendment.").

520, 554 (1979).

In *Greene*, (9th Cir. 2011), the Nevada Department of Corrections instituted a ban on inmate possession of typewriters. The Ninth Circuit held that such a ban did not violate inmates' constitutional rights because the department of corrections had the legal authority to regulate inmate property:

> An agency, such as the NDOC, violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures of property "[w]ithout underlying [statutory] authority and competent procedural protections." *Vance v. Barrett,* 345 F.3d 1083, 1090 (9th Cir.2003). Nevada law provides for the regulation of personal property of offenders. Nev.Rev.Stat. § 209.239. The statute grants authority to the NDOC to create policies by which to regulate inmates' property. Implicit in the regulation of inmate property is the authority to define what an inmate can and cannot possess. In any event, when the NDOC prohibited inmates from possessing typewriters inside its institutions, that is all it did. The typewriters were not forfeited to the state; rather, inmates were allowed to send them home or make certain other dispositions of them.
>
> Here, prison officials enacted a system-wide ban with no exceptions. While Downs was not offered an individual pre-deprivation hearing, he was notified of the change in the regulation and given an adequate opportunity to comply with it. With respect to the personal property of prisoners, that is all the process that is due. *See generally, Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."). As the NDOC's enactment fell within its statutory authority, we conclude that there was no violation of due process.

*Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (brackets in original).

Plaintiff has alleged that his personal property was confiscated after he was required to put all personal items in a green duffel bag, which was smaller than his personal locker. Plaintiff did not have an opportunity to keep his property or send it to someone else, and he lost it without any ability to have it returned. Prison officials failed to document the inmates' personal property correctly and they did not document what was taken. Plaintiff was also forced to sign incomplete property forms under duress. The Superintendent of Education, who Plaintiff identifies as Mrs. Rodriguez, made Plaintiff sign an incomplete property form and was also part of the search team that took personal property. Plaintiff asked one of the officers working the unit to return his

11

personal property and the officer stated that the property was a perk of the job. There were many different officers and prison officials and it was almost impossible to get names.

Construing the Second Amended Complaint liberally, the Court finds that Plaintiff has sufficiently alleged a claim for deprivation of property without due process. Therefore, the Court will recommend that Plaintiff's Fifth Amendment deprivation of property without due process claim against Mrs. Rodriguez and John/Jane Does 1 through 5 proceed past screening.[3]

### B.  Lockdown

#### 1.  Eighth Amendment Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer,* 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The

---

[3] The Court does not take a position on whether this claim is subject to a remedy under *Bivens*. Defendants, once they are identified and served, may file any appropriate motions concerning this claim if they choose.

circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson,* 217 F.3d at 731. Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer,* 511 U.S. at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

"'The occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious.'" *Jackson v. Walker*, 2009 WL 1743639 at *8 (E.D. Cal. 2009) (quoting *Tucker v. Rose*, 955 F.Supp. 810, 816 (N.D. Ohio 1997). However, a "lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314 (9th Cir.), *opinion amended on denial of reh'g,* 75 F.3d 448 (9th Cir. 1995). "[T]he state is obligated to provide 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it,'" and "'the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions.'" *Jackson*, 2009 WL 1743639, at *8 (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)).

With respect to lack of exercise, "ordinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation and thus meets the requisite harm necessary to satisfy [the] objective test." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

Plaintiff has alleged he was denied personal hygiene, including toothpaste, toothbrushes, toilet paper, and soap during a one-week lockdown. Plaintiff received food that was not from the national menu and was served the same meals for breakfast, lunch, and dinner. Plaintiff was also deprived of exercise for one week. Plaintiff suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD, and his condition went from pre-diabetes to diabetes. Plaintiff believes that the lack of exercise and inadequate food contributed to his current medical conditions. Prison officials knew they were abusing their authority and did nothing about it.

Construing the First Amended Complaint liberally, the Court finds that, for screening purposes, Plaintiff has sufficiently alleged that he was subjected to unconstitutional conditions of confinement, and that prison staff were aware of these conditions but failed to act. The Court will therefore recommend that Plaintiff's Eighth Amendment conditions of confinement claim against John/Jane Does 6 through 10 proceed past screening.[4]

### 2. Fifth Amendment Procedural Due Process

The Due Process Clause of the Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A threshold requirement to a substantive or procedural due process claim is [a] plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994); *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-86 (1995) (internal citations and footnotes omitted).

Plaintiff alleges that the lockdown was unduly disparate informal punishment and was executed under the fabricated and erroneous pretext that Unit 2A was banging and kicking on cell doors and yelling at prison staff during the 10:00 AM count. Prison officials knew they were abusing their authority and did nothing about it.

Construing the First Amended Complaint liberally, the Court finds that, for screening purposes, Plaintiff has sufficiently alleged that he was placed on lockdown for one week, which posed an atypical and significant hardship, without procedural due process. The Court will therefore recommend that Plaintiff's Fifth Amendment procedural due process claim against Does 11 through 15 proceed past screening.[5]

---

[4] As above, the Court does not take a position on whether this claim is subject to a remedy under *Bivens*. Defendants, once they are identified and served, may file any appropriate motions concerning this claim if they choose.

[5] As above, the Court does not take a position on whether this claim is subject to a remedy under *Bivens*. Defendants,

### C.    Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at

---

once they are identified and served, may file any appropriate motions concerning this claim if they choose.

106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Plaintiff alleges he was denied medical and psychological care of an entire week and did not receive any of his prescribed medications. Prison staff deliberately threw Plaintiff's prescribed medication away during the search and denied him access to that medication. Plaintiff suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD, and his condition went from pre-diabetes to diabetes. Plaintiff believes that the lack of medical care contributed to his current medical conditions. Prison officials knew they were abusing their authority and did nothing about it.[6] Construing the First Amended Complaint liberally, the Court finds that, for screening purposes, Plaintiff has sufficiently alleged a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment against Does 16 through 20.[7]

### D. Access to Courts

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id*. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried

---

[6] Plaintiff also alleges that he believes that his race contributed to the denial of medical and psychological care because there was a difference between the way he was treated and the Mexican inmates. To the extent Plaintiff intends to raise a claim for violation of the Equal Protection Clause, the Supreme Court has only recognized a *Bivens* remedy for gender discrimination in the context of the Fifth Amendment. *See Davis*, 442 U.S. 228. However, even if an equal protection claim could be brought under *Bivens*, Plaintiff fails to state a claim. "To prevail on an Equal Protection claim . . ., Plaintiff must allege facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class,'" (citing *see Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02, (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008). Plaintiff has not alleged that any facts demonstrating that he was a member in a protected class. Plaintiff also has not alleged facts showing that any defendants intentionally discriminated against Plaintiff based on his race, or that he was intentionally treated differently than other similarly situated inmates based on his race without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

[7] As above, the Court does not take a position on whether this claim is subject to a remedy under *Bivens*. Defendants, once they are identified and served, may file any appropriate motions concerning this claim if they choose.

(backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*.").

The provision of an adequate law library or legal assistance is not an end in itself, "but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). Indeed, there is no "abstract, freestanding right to a law library or legal assistance." *Id.* at 351. Therefore, a prisoner's complaint will not survive screening if it simply alleges facts showing "that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.*

To state a viable claim for relief for denial of a right of access to the courts, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Plaintiff need not show that he would have been successful on the merits of his claims, but only that they were not frivolous. *Allen v. Sakai*, 48 F.3d 1082, 1085 & n.12 (9th Cir. 1994). A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Ninth Circuit has emphasized that "[a] prisoner need not show, ex post, that he would have been successful on the merits had his claim been considered. To hold otherwise would permit prison officials to substitute their judgment for the courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim would eventually be deemed frivolous." *Allen*, 48 F.3d at 1091 (footnote omitted).

The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Harbury,* 536 U.S. at 417. Hence, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair

notice to a defendant." *Harbury*, 536 U.S. at 416 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513–15 (2002)). Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

Plaintiff alleges that he did not have the ability to meet filing deadlines or to present his claims for both the federal courts and the prison's administrative remedies. However, an access-to-courts claim is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions and does not apply to administrative grievances. *See Lewis,* 518 U.S. at 354. Additionally, Plaintiff does not allege facts showing that he was pursuing a non-frivolous claim and suffered actual injury from any denial of access to the courts. Plaintiff does not describe any of the claims he was unable to present or deadlines he could not meet due to the alleged lack of access to the courts. Plaintiff therefore has not adequately set forth the nature and description of the underlying claims. As a result, Plaintiff fails to state a claim for denial of access to the courts.[8]

**E.    Failure to Protect**

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. *Id.* at 834.

"'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer,* 511 U.S. at 837. "Liability may

---

[8] In a reported case concerning a privately-operated federal prison, the Ninth Circuit held "that *Bivens* should not be so expanded" to "include access to the courts and procedural due process claims against private defendants under the First and Fifth Amendments, respectively." *Vega v. United States*, 881 F.3d 1146, 1148 (9th Cir. 2018). In an unreported opinion, that court found no *Bivens* remedy for First Amendment access-to-courts claims. *Schwarz*, 761 F. App'x at 734-35. District courts have reached similar conclusions. *See, e.g., Moore v. United States*, No. 1:20-cv-00451-DAD-SAB (PC), 2020 U.S. Dist. LEXIS 106303, at *7-8 (E.D. Cal. June 16, 2020) (citing *Schwarz* and collecting cases), *findings and recommendations adopted*, ECF No. 19 at 2 (Oct. 14, 2020) (considering and disagreeing with objections concerning actual injury and availability of *Bivens*); *Lee v. Matevousian*, No. 1:18-CV-00169-GSA-PC, 2018 WL 5603593, at *3-4 (E.D. Cal. Oct. 26, 2018) (finding, in light of *Abbasi*, no *Bivens* remedy for denial of access to courts). However, the Court need not determine whether Plaintiff can state a *Bivens* claim because he fails to allege a constitutional violation.

follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Plaintiff alleges that he was assaulted by his cellmate twice and that defendants A. Ciolli and John/Jane Does failed to protect him from these attacks. Plaintiff does not allege any facts indicating that A. Ciolli or the John/Jane Does knew that Plaintiff was at risk of being attacked by his cellmate and disregarded that risk by failing to take reasonable measures to abate it. Further, the allegations of the Second Amended Complaint do not show that prison staff made an intentional decision, instead of making a negligent decision or mistake. To constitute a violation of Plaintiff's constitutional rights, Plaintiff must have been subjected to an intentional decision that put Plaintiff at substantial risk of serious harm. Claims that prison staff were negligent do not state a violation of Plaintiff's constitutional rights. Accordingly, the Court finds that Plaintiff has failed to state a cognizable Eight Amendment failure to protect claim.[9]

### F.     Personal Involvement

Although Plaintiff may sue individual prison employees for damages under *Bivens*, he must link each named defendant to a violation of his constitutional rights. A prison employee cannot be held liable under *Bivens* simply for supervising other employees. *Iqbal*, 556 U.S. at 676–77 ("In a § 1983 suit or a *Bivens* action ... the term "supervisory liability" is a misnomer.") A government official is only liable for his or her own misconduct. *Id.; Starr v. Baca*, 652 F.3d 1202, 1205–08 (9th Cir. 2011), *cert. denied*, 566 U.S. 982 (2012). Therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Id.* at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged

---

[9] The Ninth Circuit has not definitively held that a failure to protect claim can be brought under *Bivens* and there is a split among district courts on the issue. *See Schanck v. Haggard*, 2021 WL 1060174, at *3 (E.D. Cal. Mar. 19, 2021) (collecting cases). However, as above, the Court need not determine whether Plaintiff can state a *Bivens* claim because he fails to allege a constitutional violation.

deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has not alleged any facts indicating that Lt. Scott, Mr. Young, and A. Ciolli personally participated in the deprivation of his rights. As to Lt. Scott and Mr. Young, there do not appear to be any references to these individuals in the Second Amended Complaint other than listing them as defendants. As to A. Ciolli, Plaintiff concludes that this defendant violated Plaintiff's rights and failed to uphold his responsibilities. However, Plaintiff does not identify any facts supporting these conclusions or describing how A. Ciolli was involved in the alleged constitutional deprivations.

Additionally, Plaintiff does not allege that A. Ciolli, Lt. Scott, or Mr. Young knew of the alleged constitutional violations and failed to act to prevent them, or that they instituted any policies that were so deficient that the policies were the moving force behind the constitutional violations. Although Plaintiff alleges that A. Ciolli changed unidentified prison policies to fit his needs, he does not describe what those policies were, how they changed, or which of his claims are based on those policy changes.[10] The Second Amended Complaint does not contain any facts establishing a causal link between those policy changes and the alleged constitutional violations.

///

---

[10] In his objections to the Court's findings and recommendations entered on May 4, 2021, Plaintiff alleged:

> I believe that A. Ciolli can be held liable for violation of my rights not because he is the Warden, but because he actually participated in the deprivation of my property. It was the orders of A. Ciolli that denied me inadequate food which I believe contributed to my current medical conditions. I was also denied exercise, proper sanitation personal hygiene, showers, medical and psychological care all because the head official gave the orders. Even if A. Ciolli did not participate in everything that violated my rights, he played the main role of the official that went against the policies that were in force and change them to fit his need at the time.

(ECF No. 12 at 1.) In response to Plaintiff's objections, the Court permitted Plaintiff to file an amended complaint and instructed him to include all factual allegations against A. Ciolli related to his claims. (ECF No. 13 at 2.) Despite these instructions, Plaintiff did not include the foregoing allegations regarding A. Ciolli in the Second Amended Complaint. As the Court has previously explained to Plaintiff, it cannot consider factual allegations in Plaintiff's objections in deciding whether Plaintiff has stated any legal claims. Further, Plaintiff has been provided the relevant legal standards on two separate occasions and has been given two opportunities to amend his complaint to remedy any deficiencies.

Accordingly, Plaintiff has failed to state a claim against Lt. Scott, Mr. Young, and A. Ciolli and the Court will recommend that these defendants be dismissed.

## V.     CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's Second Amended Complaint and finds that Plaintiff's Fifth Amendment and Eighth Amendment claims against Mrs. Rodriguez and John/Jane Does 1 through 20 should proceed past screening.  The Court also finds that all other claims and defendants should be dismissed.

The Court previously explained to Plaintiff the deficiencies in his complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff an opportunity to amend his complaint two times.  As Plaintiff filed his Second Amended Complaint with the benefit of the information provided by the Court, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.   This case proceed on Plaintiff's Fifth Amendment claim for deprivation of property without due process against Mrs. Rodriguez and John/Jane Does 1 through 5, Plaintiff's Fifth Amendment claim for deprivation of liberty without due process against John/Jane Does 6 through 10, Plaintiff's Eighth Amendment claim for unconstitutional conditions of confinement against John/Jane Does 11 through 15, and Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs against John/Jane Does 16 through 20;

2.   All other claims and defendants be dismissed for failure to state a claim upon which relief may be granted; and

3.   The Clerk of Court be directed to terminate A. Ciolli and the Federal Bureau of Prisons and to add Mrs. Rodriguez and John/Jane Does 1 through 20 as defendants on the docket.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the

specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 12, 2021**                    /s/ _Erica P. Grosjean_
                                              UNITED STATES MAGISTRATE JUDGE