1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  ANTHONY BARRETT, | Case No. 1:20-cv-01802-NONE-EPG (PC) |
| 12            Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS ACTION |
| 13      v. | PROCEED ON PLAINTIFF'S FIFTH AMENDMENT AND EIGHTH |
| 14  A. CIOLLI, et al., | AMENDMENT CLAIMS AGAINST A. CIOLLI, MR. SCOTT, MRS. RODRIGUEZ |
| 15            Defendants. | MR. COBBS, A. LEGER, C. HANSON, MR. YOUNG, AND JOHN/JANE DOES 1 |
| 16 | THROUGH 15 AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE |
| 17 | DISMISSED |
| 18 | (ECF No. 22) |
| 19 | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |
| 20 | |

21
22          Plaintiff Anthony Curtis Barrett ("Plaintiff") is a federal inmate proceeding *pro se* and *in*
23  *forma pauperis* in this civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics*
24  *Agents*, 403 U.S. 388 (1971). On August 5, 2021, after several screening orders and amendments
25  (*see* ECF Nos. 8-10, 16, 18), Plaintiff filed his Third Amended Complaint ("TAC"). (ECF No.
26  22.) The TAC is now before the Court for screening.
27          For the reasons that follow, the Court will recommend that this action proceed on the
28  following claims: deprivation of property without due process in violation of the Fifth

1

Amendment against A. Ciolli, Mr. Scott, Mrs. Rodriguez, Mr. Cobbs, and John/Jane Does 1 through 5, the prison staff assigned to Unit 2A who allegedly participated in the decision to seize Plaintiff's property on March 9, 2020; unconstitutional conditions of confinement in violation of the Eighth Amendment against A. Leger and John/Jane Does 6 through 10, the prison staff who allegedly participated in the deprivation of personal hygiene supplies, exercise, and nutritional food during the week-long lockdown of Unit 2A; and deliberate indifference to serious medical needs in violation of the Eighth Amendment against C. Hanson, Mr. Young, and John/Jane Does 11 through 15, the prison staff who allegedly deprived Plaintiff of his medication, medical care, and psychological care during the week-long lockdown of Unit 2A.[1] The Court will also recommend that Plaintiff's First Amendment access to the courts and Eighth Amendment failure to protect claims be dismissed with prejudice for failure to state a claim, and that Plaintiff's claims against Mr. Doerer for failure to provide Plaintiff with hygiene be dismissed without prejudice.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the inmate has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Plaintiff is advised that John/Jane Does 1 through 15 cannot be served until Plaintiff has identified them and filed a motion to substitute or amended his complaint to substitute the named defendant in place of John/Jane Does 1 through 15. For service to be successful, the Court and/or the United States Marshal must be able to identify and locate the defendant to be served. Plaintiff will be required to identify John/Jane Does 1 through 15 as the litigation proceeds. The Court notes that, once discovery opens, Plaintiff will be given the opportunity to seek information to identify John/Jane Does 1 through 15.

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

Plaintiff names A. Ciolli, Mr. Hurte, C. Hanson, A. Leger, Mr. Scott, Mrs. Rodriguez, Mr. Young, Mr. Cobb, and J. Doerer as defendants. The TAC[2] alleges as follows:

**Deprivation of Property**

On March 9, 2020, A. Ciolli, Mr. Scott, and Mrs. Rodriguez took Plaintiff's personal property. Plaintiff's personal property was seized while prison staff were conducting an inventory of property during a lockdown of Unit 2A. Most of the seized property was perishable food, personal hygiene, a solar powered radio, and other personal property. All items were purchased from the prison commissary and safely stored in the furnished locker provided by the Federal Bureau of Prisons. On March 8, 2020, A. Ciolli sent out a memo stating that all personal property must be placed in a green duffle bag. This memo changed the current policies set by the Federal Bureau of Prisons inmate program statement. In Mr. A. Ciolli's memo and changed policy, inmates were told not to take any personal property with them when exiting the cell, including any personal clothing, watches, wallets, mailing stamps, shoes, radios, mp3 players, etc. Inmates

---

[2] Although the allegations occasionally reference exhibits, no exhibits are attached to the TAC.

3

had to exit their cells dressed in a white t-shirt, khaki pants, one pair of boxers, and shower shoes. A. Ciolli, Mr. Scott, and Mrs. Rodriguez failed to document the inmates' personal property correctly and they did not document what was taken, a violation according to their policies. Mrs. Rodriguez forced Plaintiff to sign incomplete property forms under threat and duress.

Plaintiff asked for the return of his personal property from Mr. Cobbs, the lieutenant over property. Plaintiff never received a response from Mr. Cobbs. Plaintiff also sent various claims to the Federal Bureau of Prisons Regional and Central Offices and those claims were denied. As a prisoner, Plaintiff has a protected right and interest in his personal property and Plaintiff's property was taken deliberately to punish him for the acts of others. This was clearly an unfair practice by the Federal Bureau of Prisons staff and officials. Plaintiff has sent to the courts the policy for search and seizure according to the Federal Bureau of Prisons program statement. From the Federal Bureau of Prisons program statement, you can clearly see that A. Ciolli changed the policy to fit his agenda.

The green duffle bag measurement was 16" in depth and 42" in length and totaled approximately 6.2 feet in square measurement. This green duffle bag was only used to take Plaintiff's personal property. A. Ciolli, Mr. Scott, Mrs. Rodriguez, and prison staff knew that the green duffle bag was smaller than the inmates' assigned lockers. The assigned lockers were in each inmate's cell and were the same size in each cell, measuring approximately 24" in width, 18" in depth, and 40" in height, equaling approximately 10.8 feet in square measurement. Each officer and prison official participated in an unlawful confiscation of Plaintiff's personal property and violated Plaintiff's constitutional rights and Plaintiff is holding them each accountable personally. They had no reason whatsoever to confiscate Plaintiff's personal property.

Inmates store their personal property in the assigned lockers and not in a green duffle bag. The green duffle bag was only used for this particular occasion in order to take inmates' personal property. Plaintiff did not have any choice but to comply with the orders given to him and he was not provided an opportunity to store his personal property or send it home on his behalf. A. Ciolli, Mr. Scott, and Mrs. Rodriguez deprived Plaintiff of his personal property and liberty without due process. A. Ciolli had Plaintiff living in unconstitutional conditions of confinement.

4

1    Upon returning to his unit, Plaintiff witnessed some of his personal property in the

2    officers' station. Plaintiff asked one of the officers working the unit to return his personal

3    property and the officer stated that the property was a perk of the job. On the day of this search,

4    there were many different officers and prison officials and it was almost impossible to get names.

5    Mrs. Rodriguez, the Superintendent of Education, had Plaintiff sign an incomplete property form

6    and was also part of the search team that took personal property.

7    The search was only conducted to take inmates' personal property and was not done

8    according to policy. Plaintiff's personal property was taken by A. Ciolli, Mr. Scott, and Mrs.

9    Rodriguez under the guise of a search. Prison staff and officials should not be allowed to abuse

10   their authority and by doing so they take away the rights of the people they serve. Plaintiff's

11   family provides him with financial support to purchase things he needs. For prison staff and

12   officials to take Plaintiff's personal property because they are in a position of authority is unfair

13   to Plaintiff and his family. The United States and its staff have abused their authority and

14   deprived Plaintiff of his constitutional rights and Plaintiff has a right to be compensated for his

15   property loss. The only way Plaintiff can get justice for the deprivation is through the court. The

16   United States Federal Bureau of Prisons and its staff change the rules at their convenience to

17   benefit the prison staff and officials because they can and they make the rules. Plaintiff has

18   provided the court with exhibits in support of his deprivation of property claim and proof that A.

19   Ciolli implemented an unconstitutional policy that resulted in constitutional injury. Mr. Cobbs is

20   the "property personal" and he conspired with A. Ciolli, Mr. Scott, and Mrs. Rodriguez to

21   withhold Plaintiff's property from him.

22   **Lockdown and Medical Care**

23   Prison staff and officials failed to provide inmates with basic necessities, such as

24   toothpaste, toothbrush, toilet paper, and soap for a full week. The United States is not a third

25   world country. This treatment Plaintiff received caused tension between Plaintiff and his

26   cellmate. The United States Federal Bureau of Prisons and its officials had two men existing in a

27   confined space and living in inhumane conditions for one week. Prison staff knew that they were

28   abusing their authority, but it's punishment and they are prisoners, so who cares what happens to

5

1    them. The lack of sanitation was severe and prolonged.

2         Plaintiff received no nutritionally adequate food for one full week and he received the

3    same meal for breakfast, lunch, and dinner. The food was totally unhealthy for Plaintiff due to the

4    fact that Plaintiff suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD.

5    The lack of exercise caused Plaintiff great stress and he was treated inhumanely. Plaintiff believes

6    this treatment caused his hypertension and diabetes. Plaintiff was denied medical and

7    psychological care for that entire week. Plaintiff did not receive any of his prescribed

8    medications. Plaintiff was diagnosed by a physician of the above conditions and treatment for

9    those conditions was denied. This was left unattended and caused substantial risk of serious harm.

10   Plaintiff did not have hypertension or diabetes until this occurrence. Adequate medical care has

11   been violated. Plaintiff is continuing to suffer from this denial of care still today.

12        Plaintiff was assaulted by his cellmate twice, once during the week of this lockdown and

13   another on June 27, 2020. Plaintiff's safety and safe keeping was denied, a violation of the United

14   States Federal Bureau of Prisons policy subsection 4042. Plaintiff was helpless and he believes

15   that his race contributed to the denial of his medical and psychological care because there was a

16   difference between the way Plaintiff was treated and the Mexican inmates.

17        Plaintiff's medical condition went from pre-diabetes to diabetes. Plaintiff never had

18   hypertension. Plaintiff believes that the deprivation of medical care, lack of exercise, and

19   inadequate food all contributed to his current medical conditions. Plaintiff's personal safety was

20   jeopardized and no one did anything about it. It was as if it did not happen at all. The denial of

21   medical treatment Plaintiff received during this period was a deliberate indifference to serious

22   medical needs.

23        Because Mr. Hanson denied Plaintiff his prescribed medication, he and Mr. Young both

24   committed acts with deliberate indifference to the serious medical needs. This indifference

25   appeared when Mr. Hanson and Mr. Young denied and intentionally interfered with Plaintiff's

26   medical treatment that was prescribed. Mr. Hanson and Mr. Young has ignored the instructions of

27   the prison physician that was treating Plaintiff at the time.

28   ///

6

It is Plaintiff's understanding that the government has an obligation to provide medical care for those whom it is punishing by incarceration. Plaintiff relies on prison authorities to treat Plaintiff's medical and psychological needs, and if the authorities fail to do so, those needs will not be met. Not giving Plaintiff his prescribed medication and denying him psychological care has caused his condition to worsen. This treatment has further significant injury and the defendants' response to the need was deliberately indifferent. Prison staff/John or Jane Doe deliberately threw Plaintiff's prescribed medication away during this search and denied Plaintiff access to obtain that medication. Mr. Hanson and Mr. Young disregarded an excessive risk to my health and safety. Plaintiff made several requests to health services for the issue of his medication. Plaintiff's attempts were denied. Mr. Hanson and Mr. Young purposely denied Plaintiff's medical need and harm caused by indifference. Plaintiff was denied medical and psychological care for an entire week and he did not receive any of his prescribed medication. Plaintiff currently suffers from hypertension, diabetes, chronic kidney disease, anxiety, PTSD, and his eyes have become worse due to the assault by his cellmate.

Mr. Hanson and Mr. Young knew they were abusing their authority and continued to do nothing about it. A. Ciolli, Mr. Hanson, and Mr. Young went against the policies that were in force. Mr. A. Leger denied Plaintiff adequate nutritionally food. This food was totally unhealthy for Plaintiff due to the fact that he suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD. Mr. A. Leger did not follow the national menu for this entire week and he implemented his own policies and menu. Mr. Hurte denied Plaintiff safekeeping, care, and substance. The assault by Plaintiff's cellmate that caused injury to Plaintiff's eyes could have been prevented due to the fact that the incident was previously reported to Mr. Hurte and to his staff.

In general, the United States Federal Burau of Prisons, under the direction of the Attorney General, have charge of the management and regulation of all federal penal and correctional institutions, they are to provide suitable quarters, provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States. ///

7

Plaintiff was assaulted by his cellmate twice. This assault failed the safekeeping standard of care by A. Ciolli, Mr. Hurte, and all the John and Jane Does at the United States Penitentiary Atwater. Plaintiff could have lost his life very easily. The policies set out for staff, officials, John and Jane Does are not held and are changed at their convenience. The people in their personal capacity, staff and officials alike, must be held accountable for their personal actions of Plaintiff's constitutional rights that they each have violated. Cruel and unusual punishment, deprivation of property, denial of medical care, psychological care, due process, and access to courts.

**Access to Courts**

Plaintiff had claims in the courts and missed some important deadlines around this time. A. Ciolli's acts frustrated Plaintiff's litigation. Plaintiff's claims at the time were arguable underlying claims that got dismissed due to this denial of access to courts, to do the proper research on the litigation. A. Ciolli has failed to uphold the office that he was sworn to uphold. Plaintiff's care and safekeeping is in the hands of the officials and staff of the United States Federal Bureau of Prisons. A misuse of power has caused Plaintiff's constitutional rights to be violated. There has been a negligence on the part of staff, officials, John and Jane Does in their personal capacity to follow their own rules and policies. The above defendants were negligent in their duties and this negligence contributed to Plaintiff's loss of his sanity, health, and eyesight. Plaintiff's losses are losses that he may never recover from or get back due to the above defendants' violation of his constitutional rights. As Plaintiff has stated before, these defendants knew that they were abusing their authority.

Plaintiff's constitutional rights are currently still being denied. On July 21, 2021, at approximately 11:00 AM during lunch meal Plaintiff asked Mr. J. Doerer about providing Plaintiff with hygiene, he quoted that Plaintiff had to be indigent. The taxpayers of the United States are charged approximately $37,000 a year per inmate and the care of the inmate is included in that $37,000. It is the duty of the United States Federal Bureau of Prisons to provide hygiene to Plaintiff, a violation of Plaintiff's rights are still being denied by the Untied States Federal Bureau of Prisons staff, officials, and or contractors. Plaintiff has not been provided proper care according to Title 18 Subsection 4042.

1   **III.    *BIVENS* CLAIMS**

2           Plaintiff is a federal prisoner bringing his claims against federal officers. Thus, the Court

3   reviews the legal standards for asserting constitutional claims against federal officials.

4           Based on the case *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971),

5   courts have found that individuals may sue federal officials for damages for constitutional

6   violations under certain circumstances. A *Bivens* action is the federal analogue to suits brought

7   against state officials under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250 (2006). The basis

8   of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent

9   that violates a clearly established constitutional right. *Baiser v. Department of Justice, Office of*

10  *U.S. Trustee*, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under *Bivens*, a

11  plaintiff must allege that a federal officer deprived him of his constitutional rights." *Serra v.*

12  *Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing *Schearz v. United States*, 234 F.3d 428, 432

13  (9th Cir. 2000). A *Bivens* claim is only available against officers in their individual capacities.

14  *Morgan v. U.S.*, 323 F.3d 776, 780 n.3 (9th Cir. 2003); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th

15  Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order

16  to state a colorable claim under *Bivens*." *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988).

17          Plaintiff must allege facts linking each named defendant to the violation of his rights.

18  *Iqbal*, 556 U.S. at 676; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010);

19  *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930,

20  934 (9th Cir. 2002). The factual allegations must be sufficient to state a plausible claim for relief,

21  and the mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556

22  U.S. at 678–79.

23          Additionally, a plaintiff must demonstrate that each named defendant personally

24  participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must

25  be an actual connection or link between the actions of the defendants and the deprivation alleged

26  to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S.

27  658, 691, 695 (1978).

28  ///

Not all constitutional cases against federal officers for damages may proceed as *Bivens* claims. There is a two-part test to determine whether a *Bivens* action may proceed. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017). A court must first consider whether the claim presents a new context from the three cases the Supreme Court has allowed to proceed under *Bivens*: *Bivens*; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980).[3] If the answer is no, the claim may proceed. If the answer is yes, the court must apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding *Bivens* to the action. *Abbasi*, 137 S. Ct. at 1857, 1875.

The Ninth Circuit has summarized those special factors as follows:

> the rank of the officer involved; whether *Bivens* is being used as a vehicle to alter an entity's policy; the burden on the government if such claims are recognized; whether litigation would reveal sensitive information; whether Congress has indicated that it does not wish to provide a remedy; whether there are alternate avenues of relief available; and whether there is adequate deterrence absent a damages remedy, among other factors. But the most important question for us to examine is whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) (internal quotation marks, citations and alterations omitted).

## IV.   ANALYSIS OF PLAINTIFF'S CLAIMS

### A.   Deprivation of Property

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974),[4] and prisoners have a protected

---

[3] The Supreme Court has summarized those three cases:

In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim. The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.

*Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (citations shortened).

[4] *Wolff* and other cases cited in this section involved state, not federal, actors, and were therefore decided under the

1   interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An

2   authorized, intentional deprivation of property is actionable under the Due Process Clause. *See*

3   *Hudson v. Palmer,* 468 U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.,* 455

4   U.S. 422 (1982)); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation

5   is one carried out pursuant to established state procedures, regulations, or statutes. *Logan,* 455

6   U.S. at 436; *Piatt v. McDougall,* 773 F.2d 1032, 1036 (9th Cir.1985); *see also Knudson v. City of*

7   *Ellensburg,* 832 F.2d 1142, 1149 (9th Cir. 1987).

8          "[D]ue process rights of prisoners and pretrial detainees [to deprivation of property

9   without due process of law] are not absolute; they are subject to reasonable limitation or

10  retraction in light of the legitimate security concerns of the institution." *Bell v. Wolfish*, 441 U.S.

11  520, 554 (1979).

12         The Ninth Circuit provided some guidance on when a correctional facility violates due

13  process rights by banning property in the case of *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014,

14  1019 (9th Cir. 2011). While the court denied a claim in that case, it provided some relevant

15  considerations for evaluating such a claim:

16         An agency, such as the NDOC, violates the Due Process Clause of the
       Fourteenth Amendment when it prescribes and enforces forfeitures of
17     property "[w]ithout underlying [statutory] authority and competent procedural
       protections." *Vance v. Barrett,* 345 F.3d 1083, 1090 (9th Cir.2003). Nevada
18     law provides for the regulation of personal property of offenders.
       Nev.Rev.Stat. § 209.239. The statute grants authority to the NDOC to create
19     policies by which to regulate inmates' property. Implicit in the regulation of
       inmate property is the authority to define what an inmate can and cannot
20     possess. In any event, when the NDOC prohibited inmates from possessing
       typewriters inside its institutions, that is all it did. The typewriters were not
21     forfeited to the state; rather, inmates were allowed to send them home or make
       certain other dispositions of them.
22
       Here, prison officials enacted a system-wide ban with no exceptions. While
23     Downs was not offered an individual pre-deprivation hearing, he was notified
24     of the change in the regulation and given an adequate opportunity to comply
       with it. With respect to the personal property of prisoners, that is all the
25

26  _____

27  Fourteenth Amendment's due process clause. However, courts use the same standards under the Fifth Amendment's
    due process clause. *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991) ("Although *Hudson* involved § 1983
    and the Fourteenth Amendment, the same due process principles apply to the federal government through the Fifth
28  Amendment.").

1

2

3

4

> process that is due. *See generally, Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."). As the NDOC's enactment fell within its statutory authority, we conclude that there was no violation of due process.

5

*Greene*, 648 F.3d at 1019 (brackets in original).

6

7

8

9

10

11

12

13

14

15

16

Plaintiff has alleged that his personal property was confiscated after he was required to put all personal items in a green duffel bag, which was smaller than his personal locker. Plaintiff did not have an opportunity to keep his property or send it to someone else, and he lost it without any ability to have it returned. A. Ciolli, Mr. Scott, and Mrs. Rodriguez failed to document the inmates' personal property correctly and they did not document what was taken. Mrs. Rodriguez forced Plaintiff to sign incomplete property forms under duress and was also part of the search team that took personal property. Plaintiff asked Mr. Cobbs, who was the lieutenant in charge of property, to return Plaintiff's property and never received a response. Plaintiff asked an officer working the unit to return his personal property and the officer stated that the property was a perk of the job. There were many different officers and prison officials and it was almost impossible to get names.

17

18

19

20

21

22

Construing the TAC liberally, the Court finds that Plaintiff has sufficiently alleged a claim for deprivation of property without due process. Therefore, the Court will recommend that Plaintiff's Fifth Amendment deprivation of property without due process claim against A. Ciolli, Mr. Scott, Mrs. Rodriguez, Mr. Cobbs, and John/Jane Does 1 through 5, the prison staff assigned to Unit 2A who allegedly participated in the decision to seize Plaintiff's property on March 9, 2020, proceed past screening.[5]

23

**B.      Eighth Amendment Conditions of Confinement**

24

25

26

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

27

28

---

[5] The Court does not take a position on whether this claim is subject to a remedy under *Bivens*. Defendants, once they are identified and served, may file any appropriate motions concerning this claim if they choose.

1    Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See*

2    *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th

3    Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d

4    1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with

5    "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*,

6    801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*,

7    515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v.*

8    *Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir.

9    1981).

10    　　　Two requirements must be met to show an Eighth Amendment violation. *Farmer,* 511

11    U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation

12    and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable

13    state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.*

14    (citations and internal quotation marks omitted). Prison officials act with deliberate indifference

15    when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The

16    circumstances, nature, and duration of the deprivations are critical in determining whether the

17    conditions complained of are grave enough to form the basis of a viable Eighth Amendment

18    claim. *Johnson,* 217 F.3d at 731. Mere negligence on the part of a prison official is not sufficient

19    to establish liability, but rather, the official's conduct must have been wanton. *Farmer,* 511 U.S.

20    at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

21    　　　"'The occasional presence of a rodent is insufficient to establish the objective component

22    of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious.'"

23    *Jackson v. Walker*, 2009 WL 1743639 at *8 (E.D. Cal. 2009) (quoting *Tucker v. Rose*, 955

24    F.Supp. 810, 816 (N.D. Ohio 1997). However, a "lack of sanitation that is severe or prolonged

25    can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v.*

26    *Cty. of Kern*, 45 F.3d 1310, 1314 (9th Cir.), *opinion amended on denial of reh'g,* 75 F.3d 448 (9th

27    Cir. 1995). "[T]he state is obligated to provide 'nutritionally adequate food that is prepared and

28    served under conditions which do not present an immediate danger to the health and well being of

13

1    the inmates who consume it,'" and "'the state health code, while not establishing 'constitutional

2    minima,' is relevant in making a finding regarding the constitutionality of existing conditions.'"

3    *Jackson*, 2009 WL 1743639, at *8 (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)).

4         With respect to lack of exercise, "ordinarily the lack of outside exercise for extended

5    periods is a sufficiently serious deprivation and thus meets the requisite harm necessary to satisfy

6    [the] objective test." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). However, "a

7    temporary denial of outdoor exercise with no medical effects is not a substantial deprivation."

8    *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

9         Plaintiff has alleged he was denied personal hygiene, including toothpaste, toothbrushes,

10   toilet paper, and soap during a one-week lockdown. Plaintiff received food that was not from the

11   national menu and was served the same meals for breakfast, lunch, and dinner. Plaintiff was also

12   deprived of exercise for one week. Plaintiff suffers from hypertension, diabetes, chronic kidney

13   disease, anxiety, and PTSD, and his condition went from pre-diabetes to diabetes. Plaintiff

14   believes that the lack of exercise and inadequate food contributed to his current medical

15   conditions. Mr. A. Leger denied Plaintiff nutritional food, did not follow the national menu for

16   this week, and implemented his own policies and menu.

17        Construing the TAC liberally, the Court finds that, for screening purposes, Plaintiff has

18   sufficiently alleged that he was subjected to unconstitutional conditions of confinement, and that

19   prison staff were aware of these conditions but failed to act. The Court will therefore recommend

20   that Plaintiff's Eighth Amendment conditions of confinement claim against A. Leger and

21   John/Jane Does 6 through 10, the prison staff who allegedly participated in the deprivation of

22   personal hygiene supplies, exercise, and nutritional food during the week-long lockdown of Unit

23   2A,  proceed past screening.[6]

24        **C.      Medical Care**

25        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

26   must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091,

27   —————————————

28   [6] As above, the Court does not take a position on whether this claim is subject to a remedy under *Bivens*. Defendants, once they are identified and served, may file any appropriate motions concerning this claim if they choose.

1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Plaintiff alleges he was denied medical and psychological care for an entire week and did not receive any of his prescribed medications. Prison staff deliberately threw Plaintiff's

1  prescribed medication away during the search and denied him access to that medication. Plaintiff

2  believes that the lack of medical care contributed to his current medical conditions. Mr. Hanson

3  and Mr. Young denied and intentionally interfered with Plaintiff's prescribed medical treatment.[7]

4         Construing the TAC liberally, the Court finds that, for screening purposes, Plaintiff has

5  sufficiently alleged a claim for deliberate indifference to serious medical needs in violation of the

6  Eighth Amendment against C. Hanson, Mr. Young, and John/Jane Does 11 through 15, the prison

7  staff who allegedly deprived Plaintiff of his medication, medical care, and psychological care

8  during the week-long lockdown of Unit 2A.[8]

9        **D.**     **Access to Courts**

10         Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S.

11  343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right is limited to the filing of

12  direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for denial of

13  access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to

14  be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried

15  (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva*

16  *v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Coleman v.*

17  *Tollefson*, 575 U.S. 532 (2015) (differentiating "between two types of access to court claims:

18  those involving prisoners' right to affirmative *assistance* and those involving prisoners' rights to

---

20  [7] Plaintiff also alleges that he believes that his race contributed to the denial of medical and psychological care because there was a difference between the way he was treated and the Mexican inmates. To the extent Plaintiff

21  intends to raise a claim for violation of the Equal Protection Clause, the Supreme Court has only recognized a *Bivens* remedy for gender discrimination in the context of the Fifth Amendment. *See Davis,* 442 U.S. 228. However, even if an equal protection claim could be brought under *Bivens,* Plaintiff fails to state a claim. "To prevail on an Equal

22  Protection claim . . ., Plaintiff must allege facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class,'" (citing *see Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)), or that

23  similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02, (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546

24  F.3d 580, 592 (9th Cir. 2008). Plaintiff has not alleged that any facts demonstrating that he was a member in a protected class. Plaintiff also has not alleged facts showing that any defendants intentionally discriminated against

25  Plaintiff based on his race, or that he was intentionally treated differently than other similarly situated inmates based on his race without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for

26  relief for violation of his right to equal protection.

27

28  [8] As above, the Court does not take a position on whether this claim is subject to a remedy under *Bivens*. Defendants, once they are identified and served, may file any appropriate motions concerning this claim if they choose.

1    litigate without active *interference*.").

2        The provision of an adequate law library or legal assistance is not an end in itself, "but

3    only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of

4    fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430

5    U.S. at 825). Indeed, there is no "abstract, freestanding right to a law library or legal

6    assistance." *Id.* at 351. Therefore, a prisoner's complaint will not survive screening if it simply

7    alleges facts showing "that his prison's law library or legal assistance program is subpar in some

8    theoretical sense." *Id.*

9        To state a viable claim for relief for denial of a right of access to the courts, Plaintiff must

10   show that he suffered an actual injury, which requires "actual prejudice with respect to

11   contemplated or existing litigation, such as the inability to meet a filing deadline or to present a

12   claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir.

13   2004) (defining actual injury as the "inability to file a complaint or defend against a charge").

14   Plaintiff need not show that he would have been successful on the merits of his claims, but only

15   that they were not frivolous. *Allen v. Sakai*, 48 F.3d 1082, 1085 & n.12 (9th Cir. 1994). A claim

16   "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490

17   U.S. 319, 325 (1989). The Ninth Circuit has emphasized that "[a] prisoner need not show, ex

18   post, that he would have been successful on the merits had his claim been considered. To hold

19   otherwise would permit prison officials to substitute their judgment for the courts' and to interfere

20   with a prisoner's right to court access on the chance that the prisoner's claim would eventually be

21   deemed frivolous." *Allen*, 48 F.3d at 1091 (footnote omitted).

22       The nature and description of the underlying claim must be set forth in the pleading "as if

23   it were being independently pursued." *Harbury,* 536 U.S. at 417. Hence, "the underlying cause of

24   action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair

25   notice to a defendant." *Harbury*, 536 U.S. at 416 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S.

26   506, 513–15 (2002)). Finally, Plaintiff must specifically allege the "remedy that may be awarded

27   as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

28   ///

Plaintiff alleges that he did not have the ability to meet filing deadlines or to present his claims with the courts. However, Plaintiff does not allege facts showing that he was pursuing a non-frivolous claim and suffered actual injury from any denial of access to the courts. Plaintiff does not describe any of the claims he was unable to present or deadlines he could not meet due to the alleged lack of access to the courts. Plaintiff therefore has not adequately set forth the nature and description of the underlying claims. As a result, Plaintiff fails to state a claim for denial of access to the courts.[9]

### E.    Failure to Protect

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. *Id.* at 834.

"'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer,* 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad,* 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

Plaintiff alleges that he was assaulted by his cellmate twice and that Mr. Hurte failed to protect Plaintiff. Specifically, Plaintiff alleges that an assault that caused injury to Plaintiff's eyes could have been prevented because the incident was previously reported to Mr. Hurte and to his

---

[9] In a reported case concerning a privately-operated federal prison, the Ninth Circuit held "that *Bivens* should not be so expanded" to "include access to the courts and procedural due process claims against private defendants under the First and Fifth Amendments, respectively." *Vega v. United States*, 881 F.3d 1146, 1148 (9th Cir. 2018). In an unreported opinion, that court found no *Bivens* remedy for First Amendment access-to-courts claims. *Schwarz*, 761 F. App'x at 734-35. District courts have reached similar conclusions. *See, e.g., Moore v. United States*, No. 1:20-cv-00451-DAD-SAB (PC), 2020 U.S. Dist. LEXIS 106303, at *7-8 (E.D. Cal. June 16, 2020) (citing *Schwarz* and collecting cases), *findings and recommendations adopted*, ECF No. 19 at 2 (Oct. 14, 2020) (considering and disagreeing with objections concerning actual injury and availability of *Bivens*); *Lee v. Matevousian*, No. 1:18-CV-00169-GSA-PC, 2018 WL 5603593, at *3-4 (E.D. Cal. Oct. 26, 2018) (finding, in light of *Abbasi*, no *Bivens* remedy for denial of access to courts). However, the Court need not determine whether Plaintiff can state a *Bivens* claim because he fails to allege a constitutional violation.

1  staff. However, while Plaintiff alleges that an incident was reported to Mr. Hurte, Plaintiff does

2  not explain what exactly he said to Mr. Hurte, what Mr. Hurte's response was, or what he alleges

3  Mr. Hurte could or should have done to protect Plaintiff. Plaintiff thus fails to allege that Mr.

4  Hurte or prison staff disregarded any risk to Plaintiff by failing to take reasonable measures to

5  abate it. The allegations of the TAC also do not show that Mr. Hurte or other prison staff made an

6  intentional decision, instead of making a negligent decision or mistake. To constitute a violation

7  of Plaintiff's constitutional rights, Plaintiff must have been subjected to an intentional decision

8  that put Plaintiff at substantial risk of serious harm. Claims that prison staff were negligent do not

9  state a violation of Plaintiff's constitutional rights. Accordingly, the Court finds that Plaintiff has

10  failed to state a cognizable Eight Amendment failure to protect claim.[10]

11      **F.      Unrelated Claims**

12          A complaint must comply with the requirements of Federal Rules of Civil Procedure 18

13  and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against

14  different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2).

15          The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a
16          claim to relief as an original claim, counterclaim, cross-claim, or third party
            claim, may join, either as independent or as alternate claims, as many claims,
17          legal, equitable, or maritime, as the party has against an opposing party.' Thus
            multiple claims against a single party are fine, but Claim A against Defendant
18          1 should not be joined with unrelated Claim B against Defendant 2. Unrelated
            claims against different defendants belong in different suits, not only to
19          prevent the sort of morass [a multiple claim, multiple defendant] suit
            produce[s], but also to ensure that prisoners pay the required filing fees-for the
20          Prison Litigation Reform Act limits to 3 the number of frivolous suits or
            appeals that any prisoner may file without prepayment of the required fees. 28
21          U.S.C. § 1915(g).

22  *K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013),

23  *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791

24  (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir.

25

26  ───────────────
    [10] The Ninth Circuit has not definitively held that a failure to protect claim can be brought under *Bivens* and there is a
27  split among district courts on the issue. *See Schanck v. Haggard*, 2021 WL 1060174, at *3 (E.D. Cal. Mar. 19, 2021)
    (collecting cases). However, as above, the Court need not determine whether Plaintiff can state a *Bivens* claim
28  because he fails to allege a constitutional violation.

2007). *See also* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.").

Plaintiff names J. Doerer as a defendant. The TAC alleges that, on July 21, 2021, Plaintiff asked Mr. Doerer about providing Plaintiff with hygiene and Mr. Doerer told Plaintiff that he had to be indigent. There are no other allegations in the TAC concerning Mr. Doerer.

Plaintiff's claim regarding Mr. Doerer is not related to the remainder of his claims concerning the confiscation of his personal property and lockdown. Thus, this claim violates Federal Rules of Civil Procedure 18 and 20. Plaintiff may not pursue multiple unrelated actions in one lawsuit. The Court therefore recommends dismissing Plaintiff's claim against Mr. Doerer without prejudice for failure to comply with Federal Rules of Civil Procedure 18 and 20. If Plaintiff so chooses, he may file a separate lawsuit concerning his claim against Mr. Doerer.

## V.     CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's TAC and finds that Plaintiff's Fifth Amendment and Eighth Amendment claims against A. Ciolli, Mr. Scott, Mrs. Rodriguez, Mr. Cobbs, A. Leger, C. Hanson, Mr. Young, and John/Jane Does 1 through 15 should proceed past screening. The Court also finds that all other claims and defendants should be dismissed.

The Court previously explained to Plaintiff the deficiencies in his complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff an opportunity to amend his complaint three times. As Plaintiff filed his TAC with the benefit of the information provided by the Court, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.  This case proceed on: Plaintiff's Fifth Amendment claim for deprivation of property without due process against A. Ciolli, Mr. Scott, Mrs. Rodriguez, Mr. Cobbs, and John/Jane Does 1 through 5, the prison staff assigned to Unit 2A who allegedly participated in the decision to seize Plaintiff's property on March 9, 2020; Plaintiff's

Eighth Amendment claim for unconstitutional conditions of confinement against A. Leger and John/Jane Does 6 through 10, the prison staff who allegedly participated in the deprivation of personal hygiene supplies, exercise, and nutritional food during the week-long lockdown of Unit 2A; and Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs against C. Hanson, Mr. Young, and John/Jane Does 11 through 15, the prison staff who allegedly deprived Plaintiff of his medication, medical care, and psychological care during the week-long lockdown of Unit 2A;[11]

1. Plaintiff's First Amendment access to the courts and Eighth Amendment failure to protect claims be dismissed with prejudice for failure to state a claim;

2. Plaintiff's claims against Mr. Doerer for failure to provide Plaintiff with hygiene be dismissed without prejudice; and

3. The Clerk of Court be directed to terminate the Federal Bureau of Prisons and to add Mr. Scott, Mrs. Rodriguez, Mr. Cobbs, A. Leger, C. Hanson, Mr. Young, and John/Jane Does 1 through 15 as defendants on the docket.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**September 22, 2021**__          /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE

---

[11] Plaintiff will be required to identify and substitute Doe defendants by a date that will be set by a separate order after the remaining defendants have been served and appeared in the case.