UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BARRETT,<br><br>        Plaintiff,<br><br>    v.<br><br>A. CIOLLI *et al.*,<br><br>        Defendants. | Case No. 1:20-cv-01802-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED<br><br>(ECF No. 68). |

Anthony Barrett ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). This case proceeds on Plaintiff's Fifth Amendment deprivation of property claims against Defendants Ciolli, Scott, Rodriguez, Cobb, and Doe Defendants 1 through 5 and on Plaintiff's Eighth Amendment conditions of confinement claims against Defendant Leger and Doe Defendants 6 through 10.[1] Plaintiff's claims arise from a lockdown of Plaintiff's prison unit in March 2020. Plaintiff generally alleges that his personal property was confiscated without due process, and that Plaintiff was deprived of personal hygiene supplies, exercise, and nutritional

---

[1] All other claims and defendants identified in Plaintiff's third amended complaint (ECF No. 39) have been dismissed. (ECF No. 35, p. 3-4 (order adopting findings and recommendations regarding Plaintiff's third amended complaint); ECF No. 65, p. 3 (order adopting recommendation that Defendants' pre-answer motion for summary judgment based on Plaintiff's failure to exhaust be partially denied)).

1

food during the lockdown. All other claims and defendants identified in Plaintiff's third amended complaint have been dismissed.

Before the Court is Defendant's Ciolli, Scott, Rodriguez, Cobb, and Leger's motion to dismiss Plaintiff's remaining claims against the named defendants. (ECF No. 68). For the reasons that follow, and in light of *Egbert v. Boule*, 142 S. Ct. 1793 (2022), the Court will recommend that Defendants' motion to dismiss be granted because Plaintiff's claims arise in a new context and there is at least one special factor indicating that the Judiciary is less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. For those same reasons, the Court will also recommend that Plaintiff's claims against Doe Defendants 1 through 10 be dismissed.

## I. RELEVANT PROCEDURAL HISTORY

The operative complaint in this case is Plaintiff's third amended complaint. (*See* ECF Nos. 24, 35, 39). After the Court screened Plaintiff's third amended complaint, Defendants filed a pre-answer motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. (ECF No. 56). The Court recommended that Defendants' motion be granted in part. (ECF No. 64). Specifically, the Court recommended that summary adjudication be denied as to Plaintiff's claims for deprivation of property without due process against Defendants Ciolli, Scott, Rodriguez, Cobb, and Doe Defendants 1 through 5, as well as Plaintiff's unconstitutional conditions of confinement claims against Defendant Leger and Doe Defendants 6 through 10. (*Id.* at p. 15-16). Further, the Court recommended that all other claims and defendants be dismissed, without prejudice, for failure to exhaust. (*Id.*) On October 28, 2022, District Judge Jennifer L. Thurston issued an order adopting the Court's finding and recommendations. (ECF No. 65).

## II. CLAIMS AT ISSUE

Plaintiff's TAC alleges in relevant part as follows:

### A. Deprivation of Property Allegations

On March 9, 2020, Defendants Ciolli, Scott, and Rodriguez took Plaintiff's personal property. Plaintiff's personal property was seized while prison staff were conducting an inventory of property during a lockdown of Unit 2A. Most of the seized property was perishable food, personal hygiene, a solar powered radio, and other personal property. All items were purchased

from the prison commissary and safely stored in the furnished locker provided by the Federal Bureau of Prisons.

On March 8, 2020, Defendant Ciolli sent out a memo stating that all personal property must be placed in a green duffle bag. This memo changed the current policies set by the Federal Bureau of Prisons inmate program statement. According to Defendant Ciolli's memo and changed policy, inmates were told not to take any personal property with them when exiting the cell, including any personal clothing, watches, wallets, mailing stamps, shoes, radios, mp3 players, etc. Inmates had to exit their cells dressed in a white t-shirt, khaki pants, one pair of boxers, and shower shoes. Defendants Ciolli, Scott, and Rodriguez failed to document the inmates' personal property correctly and they did not document what was taken, which is a violation according to their policies. Defendant Rodriguez forced Plaintiff to sign incomplete property forms under threat and duress.

Plaintiff asked for the return of his personal property from Defendant Cobb, the lieutenant over property. Plaintiff never received a response from Defendant Cobb. Plaintiff also sent various claims to the Federal Bureau of Prisons Regional and Central Offices and those claims were denied. As a prisoner, Plaintiff has a protected right and interest in his personal property and Plaintiff's property was taken deliberately to punish him for the acts of others. This was clearly an unfair practice by the Federal Bureau of Prisons staff and officials. Plaintiff has sent to the courts the policy for search and seizure according to the Federal Bureau of Prisons program statement. Based on the Federal Bureau of Prisons program statement, it is clear that Defendant Ciolli changed the policy to fit his agenda.

The green duffle bag measurement was 16" in depth and 42" in length and totaled approximately 6.2 feet in square measurement. This green duffle bag was only used to take Plaintiff's personal property. Defendants Ciolli, Scott, Rodriguez, and prison staff knew that the green duffle bag was smaller than the inmates' assigned lockers. The assigned lockers were in each inmate's cell and were the same size in each cell, measuring approximately 24" in width, 18" in depth, and 40" in height, equaling approximately 10.8 feet in square measurement. Each officer and prison official participated in an unlawful confiscation of Plaintiff's personal property and violated Plaintiff's constitutional rights and Plaintiff is holding them each accountable

personally. They had no reason whatsoever to confiscate Plaintiff's personal property.

Inmates store their personal property in the assigned lockers and not in a green duffle bag. The green duffle bag was only used for this particular occasion in order to take inmates' personal property. Plaintiff did not have any choice but to comply with the orders given to him and he was not provided an opportunity to store his personal property or send it home on his behalf. Defendants Ciolli, Scott, and Rodriguez deprived Plaintiff of his personal property and liberty without due process. Defendant Ciolli had Plaintiff living in unconstitutional conditions of confinement.

Upon returning to his unit, Plaintiff witnessed some of his personal property in the officers' station. Plaintiff asked one of the officers working the unit to return his personal property and the officer stated that the property was a perk of the job. On the day of this search, there were many different officers and prison officials, and it was almost impossible to get names. Defendant Rodriguez, the Superintendent of Education, had Plaintiff sign an incomplete property form and was also part of the search team that took personal property.

The search was only conducted to take inmates' personal property and was not done according to policy. Plaintiff's personal property was taken by Defendants Ciolli, Scott, and Rodriguez under the guise of a search. Prison staff and officials should not be allowed to abuse their authority and by doing so they take away the rights of the people they serve. Plaintiff's family provides him with financial support to purchase things he needs. For prison staff and officials to take Plaintiff's personal property because they are in a position of authority is unfair to Plaintiff and his family. The United States and its staff have abused their authority and deprived Plaintiff of his constitutional rights and Plaintiff has a right to be compensated for his property loss. The only way Plaintiff can get justice for the deprivation is through the court. The United States Federal Bureau of Prisons and its staff change the rules at their convenience to benefit the prison staff and officials because they can and they make the rules. Plaintiff has provided the court with exhibits in support of his deprivation of property claim and proof that Defendants Ciolli implemented an unconstitutional policy that resulted in constitutional injury. Defendant Cobb is the "property personal" and he conspired with Defendants Ciolli, Scott, and Rodriguez to withhold Plaintiff's property from him.

### B. Conditions of Confinement Allegations

Prison staff and officials failed to provide inmates with basic necessities, such as toothpaste, toothbrush, toilet paper, and soap for a full week. The United States is not a third world country. This treatment Plaintiff received caused tension between Plaintiff and his cellmate. The United States Federal Bureau of Prisons and its officials had two men existing in a confined space and living in inhumane conditions for one week. Prison staff knew that they were abusing their authority, but it's punishment and they are prisoners, so who cares what happens to them. The lack of sanitation was severe and prolonged.

Plaintiff received no nutritionally adequate food for one full week and he received the same meal for breakfast, lunch, and dinner. The food was totally unhealthy for Plaintiff due to the fact that Plaintiff suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD. The lack of exercise caused Plaintiff great stress and he was treated inhumanely. Plaintiff believes this treatment caused his hypertension and diabetes.

Defendant Leger denied Plaintiff adequate nutritional food. This food was totally unhealthy for Plaintiff due to the fact that he suffers from hypertension, diabetes, chronic kidney disease, anxiety, and PTSD. Defendant Leger did not follow the national menu for the entire week, and he implemented his own policies and menu.

As relief, Plaintiff seeks injunctive relief and 1.5 million dollars in compensatory damages.

### III. MOTION TO DISMISS

On November 11, 2022, Defendants filed a motion to dismiss Plaintiff's remaining claims on two grounds: 1) the Court should decline to recognize Plaintiff's *Bivens* claims in light of the standards set forth by *Egbert v. Boule*; and 2) the Defendants are entitled to qualified immunity.[2] (ECF No. 68-1, p. 9). Defendants primarily contend that the Court should decline to recognize Plaintiff's claims under *Bivens* because Plaintiff's due process and conditions of confinement claims present new contexts that are different from the three *Bivens* cases previously recognized

---

[2] Defendants also argue that "because [Plaintiff] has adequate post-deprivation remedies, he cannot state a Fifth Amendment claim for lack of due process." However, because the Court recommends that Defendants' motion to dismiss be granted pursuant to *Egbert v. Boule*, the Court will not address Defendants' other arguments.

by the Supreme Court. (*Id.* at p. 15). Further, numerous special factors—including that Congress has provided numerous alternatives to *Bivens* litigation that allow a remedy for Plaintiff's claim, has not created a stand-alone damages remedy for federal prisoners, and has exclusively delegated the administration of federal prisons to the Bureau of Prisons—counsel against creating an individual damages remedy for Plaintiff's claims. (*Id.* at p. 16-21).

Plaintiff filed his opposition on February 6, 2023. (ECF No. 71). Plaintiff argues that Defendants seek dismissal by "stating case law that does not pertain to [Plaintiff's] claims." (*Id.* at p. 1). However, Plaintiff's opposition does not identify any reasons why the cases cited by Defendants are not applicable to Plaintiff's claim nor does Plaintiff provide any argument regarding the viability of his *Bivens* claims post-*Egbert.*

Defendants' reply notes that Plaintiff's opposition "merely asserts that [Plaintiff's] constitutional rights were violated." (ECF No. 73, p. 1).

## IV. MOTION TO DISMISS LEGAL STANDARDS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974).

## V. DISCUSSION

In *Egbert v. Boule*, 142 S. Ct. 1793, the United States Supreme Court explained the following steps for evaluating a constitutional claim for damages against a federal official:

> To inform a court's analysis of a proposed *Bivens* claim, [The Supreme Court's] cases have framed the inquiry as proceeding in two steps. First, we ask whether the case presents a new *Bivens* context—i.e., is it meaningful[ly] different from the three cases in which the [Supreme] Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a Bivens remedy.

*Egbert*, 142 S. Ct. at 1803 (alteration in original) (citations and internal quotation marks omitted). These steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." (*Id.*) (internal quotation marks omitted).

Here, Plaintiff's claims are all federal constitutional claims against federal officials. Although Plaintiff seeks prospective relief in addition to damages, Plaintiff's claims do not allege continuing violations that would make such injunctive relief appropriate. Thus, the issue before the Court is thus whether Plaintiff's claims involve a new context, and if so, whether there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. For the reasons that follow, the Court finds that Plaintiff's claims involve a new context and that there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing damages actions to proceed.

Accordingly, the Court will recommend that Defendants' motion to dismiss be granted.

   a. New Context

      i. *Legal Standards*

A case presents a new context if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017). The Supreme Court has declined "to create an exhaustive list of differences that are meaningful

7

enough to make a given context a new one," *id.* at 1859-60, but provided the following instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860.

As to the three cases that the Supreme Court has allowed to proceed under *Bivens*, the Supreme Court has summarized those three cases:

> In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim. The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.

*Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (citations shortened).

      ii. *Analysis*

This case is proceeding on Plaintiff's Fifth Amendment deprivation of property claim against prison officials and on Plaintiff's Eighth Amendment conditions of confinement claim against prison officials. Plaintiff's claims are based on allegations that prison officials wrongfully confiscated his person property and deprived Plaintiff of personal hygiene items, exercise, and adequately nutritious food during a one-week lockdown of Plaintiff's prison unit.

As discussed below, there are meaningful differences between the claims at issue and previously recognized *Bivens* claims, and because of those differences, Plaintiff's claims arise in a new context.

The Court will first address Plaintiff's Fifth Amendment claim. The Supreme Court has recognized a *Bivens* remedy for gender-based employment discrimination under Fifth Amendment due process. *See Davis v. Passman*, 99 S. Ct. 2264 (1979). Here, Plaintiff's Fifth Amendment claim for deprivation of property alleges that prison officials confiscated Plaintiff's

personal property without providing due process. Accordingly, Plaintiff's Fifth Amendment claim presents a new context from the prior *Bivens* cases. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); *Schwarz v. Meinberg*, 761 Fed.Appx. 732, 734-75 (9th Cir. Feb. 13, 2019) ("[W]hile *Davis* recognized a Fifth Amendment due process claim for gender discrimination, [plaintiff's] due process claim is a new context because it alleges national origin discrimination."); s*ee also Jackson v. McNeil*, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023) ("[Plaintiff] claims that he was deprived of property without adequate pre-deprivation notice, an argument he concedes presents a new *Bivens* context.").

Plaintiff's Eighth Amendment claim also involves a new context. The Supreme Court has allowed Eighth Amendment claims brought by federal prisoners to proceed under *Bivens*. *See Carlson v. Green*, 100 S. Ct. 1468 (1980). However, *Carlson* involved a survivorship claim based on prison official's failure to provide adequate medical attention, resulting in the decedent's death. *Id.* Here, Plaintiff's Eighth Amendment conditions of confinement claim is based on prison official's failure to provide Plaintiff personal hygiene items, exercise, and adequately nutritious food during a one-week lockdown.[3] Although Plaintiff's Eighth Amendment claims have some parallels to a claim in *Bivens*, they arise in a new context. *Abbasi*, 137 S. Ct. at 1865 ("The differences between this claim and the one in *Carlson* are perhaps small, at least in practical terms. Given [the Supreme] Court's expressed caution about extending the *Bivens* remedy, however, the new-context inquiry is easily satisfied."); *See Schwarz*, 761 F. App'x at 734 ("[Plaintiff's] Eighth Amendment claim regarding unsanitary cell conditions presents a new *Bivens* context because [plaintiff] does not allege a failure to treat a serious medical condition, which was the issue in *Carlson*.") (internal citations omitted).

Therefore, based on the foregoing, the Court finds that Plaintiff's claims arise in a new context.

---

[3] To the extent that Plaintiff's TAC alleges that a failure to provide these necessities constituted a failure to provide adequate medical attention, Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claims have been dismissed, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies. (*See* ECF No. 65).

9

b. <u>Special Factors Analysis</u>

i. *Legal Standards*

Once the Court finds that claims arise in a new context, the Court must apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding *Bivens* to the action. *Abbasi*, 137 S. Ct. at 1857, 1875. In this analysis, the Court looks to "whether there is any rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (citation and internal quotation marks omitted).[4] "[I]n most every case" the Court should defer to Congress and find that "no *Bivens* action may lie." *Id.* at 1803.

"If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1804 (citations and internal quotation marks omitted).

ii. *Analysis*

The Court finds that there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing damages actions to proceed.

Here, the Bureau of Prisons' administrative remedy program provides an alternative remedial structure to address Plaintiff's claims regarding his confiscated property and lockdown conditions. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74, (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including … grievances filed through the BOP's Administrative Remedy Program (ARP). *See* 28 CFR § 542.10 (2001) (explaining ARP as providing 'a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement')"); *Egbert*, 142 S. Ct. at 1806 ("In *Malesko*, we explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances through an Administrative Remedy Program.") (internal quotation marks omitted); *Hoffman v. Preston*, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) ("Hoffman's complaint alleges that a prison correctional officer intentionally created the risk that

---

[4] The Court notes that *Egbert* changed the relevant inquiry. *Mejia v. Miller*, 53 F.4th 501, 505 (9th Cir. 2022) ("The question is no longer whether the Judiciary is well suited, but whether Congress is better suited.").

another prisoner would assault Hoffman by publicly labeling him as a snitch and offering prisoners rewards. The Supreme Court's decision in *Egbert v. Boule* precludes recognizing a *Bivens* remedy for these allegations. Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' *Egbert*, 142 S. Ct. at 1803, why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (alteration in original).

Even if the Bureau of Prisons' administrative remedy program did not provide Plaintiff with complete relief, the question before the Court is not whether existing remedies provide complete relief. *Egbert*, 142 S. Ct. 1793, 1804. "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* (citations and internal quotation marks omitted). And, as discussed above, the existence of these alternative remedial structures is a rational reason why Congress has not authorized a damages remedy for Plaintiff's claims.

Accordingly, there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing damages actions to proceed.

As Plaintiff's claims arise in a new context and there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing *Bivens* damages actions to proceed, the Court will recommend that Defendants' motion to dismiss be granted and that this case be dismissed.[5]

    c. <u>Leave to Amend</u>

The Court will not recommend that further leave to amend be granted. Plaintiff has already been granted leave to amend several times. Moreover, there is no indication that any amendment could cure the legal issue identified in this order, and so granting Plaintiff leave to amend would be futile.

## VI.    RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

---

[5] Accordingly, and for the same reasons, the Court will also recommend that Plaintiff's claims against Doe Defendants 1 through 10 be dismissed.

1. Defendants' motion to dismiss (ECF No. 68) be GRANTED because Plaintiff's claims arise in a new context and there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing *Bivens* damages actions to proceed; and

2. Plaintiff's Fifth Amendment deprivations of property claims against Doe Defendants 1-5 be dismissed and Plaintiff's Eighth Amendment conditions of confinement claims against Doe Defendants 6-10 be dismissed;

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 19, 2023**                    /s/ Erica P. Grosjean
                                            UNITED STATES MAGISTRATE JUDGE